UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Pietro Pasquale Antonio Sgromo,                    Case No. 20-cv-1030 (JRT/LIB)

Plaintiff,

v.                                                                   **ORDER AND
REPORT AND RECOMMENDATION**

Target Brands Inc.,

Defendant.

---

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, and upon Plaintiff's Motion for Preliminary Injunction, [Docket No. 11]; Defendant's Motion to Dismiss, [Docket No. 23]; and Plaintiff's Motion for Leave to Amend Complaint. [Docket No. 52]. Plaintiff's Motion for a Preliminary Injunction, [Docket No. 11], and Defendant's Motion to Dismiss, [Docket No. 23], were referred to the undersigned by the Honorable John R. Tunheim. (Orders [Docket Nos. 18, 32]). Following a Motions Hearing, the undersigned took the parties' Motions under advisement. (Minutes [Docket No. 63]).

For the reasons discussed below, Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], is **DENIED**.

Further, the Court recommends that Plaintiff's Motion for Preliminary Injunction, [Docket No. 11], be **DENIED**, and Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.

## I.    Procedural History

Plaintiff initiated the present action on April 27, 2020, by filing his Complaint. [Docket No. 1]. On May 20, 2020, Plaintiff filed his operative Amended Complaint. [Docket No. 9]. Plaintiff's Amended Complaint names Target Brand Inc. as the sole Defendant. [Docket No. 9].

Plaintiff's Amended Complaint contains allegations related to United States Patent No. 7,046,440 (hereinafter the "'440 Patent"); United States Patent No. 8,654,422 (hereinafter the "'422 Patent"); United States Patent No. 9,511,298 (hereinafter the "'298 Patent"); and the "H20-GO!" Trademarks. (Amended Compl. [Docket No. 9]).[1] Specifically, Plaintiff alleges that Defendant offers for sale "children's bubble blowing toys, backyard water slide . . . and inflatable swimming pools that infringe" these patents and the H2O GO! Trademarks at issue in the present case. (See, Id. at 2).[2]

On May 24, 2020, Plaintiff filed his Motion for Preliminary Injunction. [Docket No. 11]. On May 26, 2020, the undersigned issued an Order establishing a schedule for the parties to file memoranda related to Plaintiff's Motion for Preliminary Injunction. (Order [Docket No. 19]).

On June 15, 2020, Defendant filed its Motion to Dismiss, [Docket No. 23], arguing that Plaintiff lacks standing to assert the claims in his Amended Complaint, and therefore, according

---

[1] Although Plaintiff, at times, refers to the "H2O GO!" Trademark as a single trademark, the record demonstrates, and Plaintiff in fact at other times alleges, the "H2O GO!" Trademark is actual three separately registered trademarks: Trademark No. 5565709, registered on September 18, 2018; Trademark No. 4940366, registered on April 19, 2016; and Trademark No. 4741874, registered on May 26, 2015 (hereinafter collectively the "H2O GO! Trademarks"). (See, Amended Compl., [Docket No. 9], at 10). Each of the H2O GO! Trademarks is a variant styling of the "H2O GO!" characters. (See, Trademarks [Docket No. 26-11]).

[2] Throughout his Amended Complaint, Plaintiff also makes references to certain "Summer Waves Trademarks." (See, e.g., Amended Compl., [Docket No. 9], at 5). Plaintiff does not, however, appear to make an actual trademark infringement claim based on any infringement of these "Summer Wave Trademarks." (See, Id. at 11–20) (containing no trademark infringement claim premised on the "Summer Wave Trademarks"). Nevertheless, to the extent Plaintiff did intend to assert a trademark infringement claim premised on an infringement on the "Summer Wave Trademarks," the undersigned would recommend that claim be dismissed for lack of subject matter jurisdiction for the same reasons discussed related to Plaintiff's trademark infringement claims premised on an alleged infringement of the H2O GO! Trademarks. Plaintiff simply fails to provide any documentation or evidence demonstrating that he has standing to pursue trademark infringement claims premised on an infringement of the "Summer Waves Trademarks."

to Defendant, the Court lacks subject matter jurisdiction to adjudicate the present case. On June 18, 2020, the undersigned issued an Order, [Docket No. 34], establishing a schedule for the parties to file memoranda related to Defendant's Motion to Dismiss. The Court scheduled oral arguments on Defendant's Motion to Dismiss to be heard before the undersigned on August 4, 2020. (Order [Docket No. 34]). The Court also informed the parties that because Defendant's Motion to Dismiss, [Docket No. 23], involved a challenge to this Court's subject matter jurisdiction, the consideration of Plaintiff's Motion for Preliminary Injunction, [Docket No. 11], would be continued until such time as Defendant's Motion to Dismiss was taken under advisement. (Order [Docket No. 34]).

On July 27, 2020, Plaintiff filed his Motion for Leave to Amend Complaint. [Docket No. 52]. Plaintiff seeks to amend his Amended Complaint to add several new proposed defendants alleging claims against these new defendants related to the same patents and trademarks already at issue in the present case. (Plf.'s Mot. [Docket No. 52]).

On August 4, 2020, the Court heard oral arguments on the parties' Motions. (Minutes [Docket No. 63]). Following the Motions Hearing, the Court took the parties' Motions under advisement. (Minutes [Docket No. 63]).

## II.    Background[3]

On October 6, 2009, there was a provisional patent application filed for the '422 Patent. (Patent Assignment Form and Assignment, [Docket No. 26-5], at 3]). Plaintiff was listed as one of the two inventors on the '422 Patent. (Id.; '422 Patent [Docket No. 1-4]).

---

[3] The facts contained in this "Background" section are derived from Plaintiff's Amended Complaint, [Docket No. 9], as well as, judicial records implicitly referenced in Plaintiff's Complaint and matters of public record. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a Court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

On October 7, 2010, after the provisional patent application was submitted but before the actual patent was issued, Plaintiff executed an "Assignment" in which he assigned "the entire right, title and interest in and to" the '422 Patent to Imperial Toy, LLC. (Patent Assignment Form and Assignment, [Docket No. 26-5], at 3]). This Assignment was recorded with the United States Patent and Trademark Office. (Id.).

On December 20, 2010, Wide Eyes Marketing, Ltd., a company which Plaintiff appears to have operated as its president and which Plaintiff appears to have wholly owned, acquired the ownership rights to the '440 Patent. (Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9). Wide Eyes Marketing acquired the ownership rights to the '440 Patent from Jacqueline Homann, the Chapter 7 Bankruptcy Trustee for Jefferey Kaehr, who invented and at that time owned, the '440 Patent. (Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9).

On June 19, 2013, Wide Eyes Marketing assigned all "right, title and interest in and to" the '440 Patent to Leonard Gregory Scott. (Patent Assignment Form & Assignment of Patent Rights [Docket No. 26-2]). In the publicly available Assignment of Patent Rights form, signed by Plaintiff, Wide Eyes Marketing averred that it was "the sole owner, assignee and holder of the record title" to the '440 Patent. (See, Id.). Plaintiff also signed the Patent Assignment form which was submitted to the United States Patent and Trademark Office and which memorializes the assignment of the '440 Patent from Wide Eyes Marketing to Mr. Scott. (See, Id.).

In June 2013, Plaintiff was in a "personal and professional relationship" with Mr. Leonard Gregory Scott. Bestway v. Sgromo, No. 4:17-cv-205 (HSG) Order [Docket No. 90] (N.D. Cal. July 2, 2018). Plaintiff offered to transfer the ownership interest in the '440 Patent to

Mr. Scott to repay Mr. Scott for monies owed. Id. In furtherance of that repayment, the entity Eureka Inventions LLC was formed with Mr. Scott as its sole member. Id.[4]

On February 18, 2014, the United States Patent and Trademark Office issued the '422 Patent. ('422 Patent [Docket No. 1-4]). Imperial Toy, LLC is listed as the sole "Assignee" on the '422 Patent. (Id.).

On February 13, 2015, Eureka Inventions filed an action in the Northern District of California alleging that certain disputes had arisen regarding two licensing agreement Eureka Inventions had entered into with Bestway. Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Complaint [Docket No. 1] (N.D. Cal. Feb. 13, 2015).[5] Specifically, Eureka Inventions asserted that a dispute had arisen regarding the products within the scope of the agreement, the validity of the right of first refusal provided for in the agreement, and whether or not certain rights within the licensing agreement had terminated. Id. Each of the licensing agreements specifically involved the '440 Patent at issue in the present case, as well as, a "water slide agreement" which included the technology which would become the '298 Patent. See, Id. As "Lead Consultant," Plaintiff, in the present case, signed one of the licensing agreements at issue in Eureka; however, Plaintiff, in the present case, was not a named party in the Eureka case. See, Id.

On October 28, 2015, Eureka Inventions and Bestway reached an agreement to resolve their dispute. Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Stipulation to

---

[4] Plaintiff was employed as a "Lead Consultant" at Eureka Inventions, LLC. See, Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Licensing Agreement [Docket No. 1-2] (N.D. Cal. Feb. 13, 2015). Mr. Scott was the sole member of Eureka Inventions, LLC. See, Id. Eureka Inventions developed products for the toy industrial and held the rights to several types of intellectual property which it licensed to various retailers. Id.

[5] Throughout his filings Plaintiff refers to Bestway (USA) Inc., Bestway (Hong Kong) Intl. Ltd., and Bestway Inflatables & Materials Corporation. (See, Amended Compl. [Docket No. 9]). The Court Orders from other District Courts, discussed herein, also refer to these same Bestway entities. Both Plaintiff and these other Courts appear, at times, to refer to these Bestway entities collectively and interchangeable. For the purposes of the present action, it is unnecessary to distinguish between these Bestway entities; it is not material to the present analysis. Therefore, for ease of reference, the Court refers to these Bestway entities collectively as Bestway.

Dismiss [Docket No. 35] (N.D. Cal. Oct. 28, 2015). On November 9, 2015, the Court for the Northern District of California granted the stipulation, and it dismissed the action. Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Stipulation to Dismiss [Docket No. 35] (N.D. Cal. Oct. 28, 2015).

As part of the agreement between the Bestway and Eureka Inventions, Bestway agreed to pay certain royalty payments to Eureka Inventions flowing from the '440 Patent and the '298 Patent. See, Bestway v. Sgromo, No. 4:17-cv-205 (HSG) Complaint [Docket No. 1] (N.D. Cal. Jan. 13, 2017). However, a dispute had arisen as to whether Mr. Sgromo or Mr. Leonard Gregory Scott and Eureka Inventions, of which Mr. Scott is the principle and sole member, were entitled to the proceeds of the settlement between the parties. See, Id. Although Mr. Sgromo and Mr. Scott attempted to resolve the dispute through arbitration, it was ultimately unsuccessful, and therefore, Bestway initiated a declaratory action to determine who was rightfully entitled to the proceeds. See, Id.

As a result of the declaratory action, the Court in Bestway's declaratory action conclude that Eureka and Mr. Scott were entitled to all proceeds flowing from the licensing agreements involving the '440 Patent and the '298 Patent. Bestway v. Sgromo, No. 4:17-cv-205 (HSG) Order [Docket No. 90] (N.D. Cal. July 2, 2018). The Court based its holding on its finding that Mr. Scott had presented evidence that Mr. Scott and Eureka Inventions were the rightful and sole owners of the '440 Patent and Mr. Sgromo had failed to demonstrate he had any ownership interest in the '298 Patent. Specifically, Mr. Scott presented the Patent Assignment form, executed by Mr. Sgromo, demonstrating that all Mr. Sgromo's previous rights in the '440 Patent were transferred to Mr. Scott, and the licensing agreement with Bestway, as negotiated by Mr. Sgromo, which provided that Mr. Scott was the owner of the '440 Patent. Id.

6

On February 22, 2019, Plaintiff, Mr. Sgromo, initiated an action against several retail stores and Eureka Inventions. Sgromo v. Bestway Enterprise Co. Ltd., No. 2:19-cv-60 (JRG/RSP) Amended Complaint [Docket No. 13] (N.D. Cal. April 9, 2019). Plaintiff alleged that Eureka Inventions and the various retailers infringed Plaintiff's rights in the '298 Patent, the '440 Patent, and the "H20 GO!" trademark. Id. The Court there concluded that Mr. Sgromo had failed to demonstrate that he had any ownership rights in the '298 Patent, the '440 Patent, or the "H20 GO!" trademark, and therefore, Mr. Sgromo lacked standing to raise his asserted claims. Sgromo v. Bestway Enterprise Co. Ltd., No. 2:19-cv-60 (JRG/RSP) Report and Recommendation [Docket No. 71] (N.D. Cal. Aug. 29, 2019) report and recommendation adopted by Order [Docket No. 98] (Sept. 25, 2019).

On February 27, 2019, Plaintiff initiated a separate action against Imperial Toy, LLC and HEB Grocery Company LP. Sgromo v. Imperial Toy, LLC, No. 2:19-cv-68 (RSP) Complaint [Docket No. 1] (E.D. Tex. Feb. 27, 2019). As relevant to the present action, Plaintiff alleged that the defendants there infringed his rights to the '422 Patent. Id. The Court there concluded that Plaintiff had failed to "provide any plausible allegations that he" then had "current ownership of the asserted patents," and therefore, the Court concluded that Plaintiff lacked standing to assert his patent infringement claims. Id. The Court noted that the patents themselves demonstrated that Imperial Toys was the assignee, not Sgromo. Id.

On November 18, 2019, Imperial Toy LCC filed for Chapter 11 voluntary bankruptcy. In re Imperial Toy LLC, No. 19-bk-52335 (MEH) (Bankr. N.D. Cal. Nov. 18, 2019). Imperial Toy's ownership right to the '422 Patent were part of the assets at issue in that proceeding. Id. On December 13, 2019, Plaintiff, Mr. Sgromo, asserted in that proceeding that he, not Imperial Toy, was the rightful owner of the '422 Patent. (Plf.'s Objection to Bankruptcy [Docket No. 22-

7]). In an Order dated December 17, 2019, the Court there rejected Plaintiff's claim, and it approved the sale of Imperial Toy's ownership right in the '422 Patent free and clear of any claim by Mr. Sgromo. (Order [Docket No. 22-6]). The '422 Patent, along with substantially all of Imperial Toy's assets were sold to Ja-Ru Inc. (Id.).

On March 18, 2020, Plaintiff filed a "Motion to Enforce Settlement" in Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Motion [Docket No. 37] (N.D. Cal. Mar. 18, 2020). Plaintiff was not a party to that action; however, he filed a Motion asserting that he had ownership rights in the intellectual property at issue in that case, and therefore, he was entitled to the royalty payments at issue in that case. Eureka Inventions, LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Order [Docket No. 71] (N.D. Cal. May 26, 2020). The Court there rejected each of Plaintiff's arguments noting that Plaintiff had repeatedly made the same claims in various other Courts without success, and the Court denied Plaintiff's "Motion to Enforce Settlement." Id.

III.    **Defendant's Motion to Dismiss. [Docket No. 23].**[6]

Defendant's Motion to Dismiss, [Docket No. 23], seeks an Order of this Court dismissing the present action in its entirety.[7] Defendant argues that Plaintiff lacks standing to raise any of

---

[6] As noted above, Plaintiff has filed a Motion for Leave to Amend Complaint. [Docket No. 52]. Under certain circumstances, a Court would consider a motion to amend a complaint before considering a motion to dismiss that same complaint. See, Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 955 (8th Cir. 2002). The circumstances of the present case, however, do not necessitate consideration of Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], before consideration of Defendant's Motion to Dismiss. [Docket No. 23]. As discussed more fully below, Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], does not alter the principal claim in Plaintiff's operative Amended Complaint, [Docket No. 9], and therefore, it does not affect the consideration of Defendant's Motion to Dismiss, [Docket No. 23], which is aimed at the claim in Plaintiff's operative Amended Complaint. Rather, Plaintiff seeks to amend his Amended Complaint to add new defendants against which Plaintiff seeks to asserts claims regarding the same patents and trademarks already at issue. (See, Plf.'s Mot. [Docket No. 23]).

[7] Defendant's Motion also contains a separate request to stay the present action, except the consideration of its Motion to Dismiss, "[w]hile the Court is considering [Defendant's] Motion to Dismiss . . . ." (Def.'s Mem., [Docket No. 25], at 5). At the Motions Hearing, Defendant's counsel clarified that Defendant's request for a stay was based on its concern that Plaintiff, while the present Motion was under advisement, would file documents which required a response from Defendant. (August 4, 2020, Motions Hearing, Digital Record at 3:20–3:25 p m.). The circumstances

his asserted claims, and therefore, the Court lacks the requisite subject matter jurisdiction to adjudicate Plaintiff's claims. (Def.'s Mem. [Docket No. 25).

Plaintiff argues that he has standing to raise the present claims. (See, Plf.'s Mem. [Docket No. 38]). Specifically, Plaintiff asserts that he retains ownership of each of the patents and trademarks at issue in the present case. (See, Id.). In support of this assertion, Plaintiff argues that any agreement which purported to transfer ownership of the intellectual property at issue was ineffective because he was not a party to that agreement, and to the extent there was an effective assignment of his rights to any of the intellectual property at issue, Plaintiff argues that the agreement has been terminated thereby reverting all ownership rights to Plaintiff. (See, Id.).

### A.  Standard of Review

Federal Courts have limited jurisdiction and may only hear matters which fall within the jurisdiction of the Federal Courts. Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) ("Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Gonzalez v. Thaler, 132 S.Ct. 641, 649 (2012). Article III of the United States Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. See, Am. United for Separation of Church and State v. Prison Fellowship Ministries, 509 F.3d 406, 420–21 (8th Cir. 2007). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and "[w]hen an action no longer satisfies the case or controversy requirement, the

---

of the present case render moot Defendant's request for a stay. First, the undersigned has now issued a Report and Recommendation on Defendant's Motion to Dismiss thereby concluding the time during which Defendant sought to stay these proceedings. Second, because the undersigned has recommended finding that the Court lacks the requisite subject matter jurisdiction to adjudicate Plaintiff's claims, the consideration of any additional filings by either party would necessarily be deferred until after the Court has reached a final determination regarding whether or not the Court possesses the requisite subject matter jurisdiction to adjudicate Plaintiff's claims. Therefore, Defendant's request for a stay is **DENIED as moot**.

action is moot and a federal court must dismiss the action." Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003) (quotations omitted).

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the U.S. Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1364 (Fed. Cir. 2010). As a jurisdictional prerequisite, standing must be established before the merits of a claim may be reached. City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). The party invoking federal jurisdiction bears the burden of showing that it has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). If a plaintiff lacks standing, the district court has no subject matter jurisdiction. Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002).

It is a tenet of our Federal Court system that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991) (emphasis added). Subject matter can never be waived or forfeited, and it can be addressed at any time. See, Gonzalez, 132 S.Ct. at 649.

The Court is required to liberally construe the filings of pro se parties, such as Plaintiff. See, Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("A document filed pro se is to be liberally construed[.]") (internal citation and quotation marks omitted)). A pro se litigant, however, "is not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

10

### B. Analysis

As observed above, standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the U.S. Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1364 (Fed. Cir. 2010). In the present case, Plaintiff bears the burden of showing that it has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Standing in a patent infringement claim is derived from the Patent Act, which provides: "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The statute defines "patentee" to include the party to whom the patent was issued and the successors in title to the patent. 35 U.S.C. § 100(d); Volovik v. Bayer Corp., No. 1-cv-1426 (JNE/JGL), 2004 WL 51317, at *2 (D. Minn. Jan. 7, 2004). A successor in interest can gain legal title to a patent only by way of a written agreement that expresses a patent owner's present intention to transfer title. 35 U.S.C. § 261 (noting that patents must be assigned by "an instrument in writing"); Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1580–81 (Fed. Cir. 1991) (discussing that legal title can be transferred only in an instrument that expresses a present intention to transfer an existing invention). The party seeking the finding of infringement bears the burden of demonstrating that he has standing to sue defendant for patent infringement. See, Morrow v. Microsoft Corp., 499 F.3d 1332, 1338 (Fed. Cir. 2007); Sicom Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005).

To demonstrate that he has standing to sue, a plaintiff must "demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." Jim Arnold

Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1571–72 (Fed. Cir. 1997). "[T]his allegation of ownership much have a plausible foundation." Id.

Similarly, to demonstrate that a plaintiff has standing to assert a trademark infringement claim, the plaintiff must demonstrate that he is either "the owner [of the trademark] or, under certain circumstances, the exclusive licensee of that trademark." Coyne's & Co., Inc. v. Enesco, LLC, No. 7-cv-4095, 2007 WL 3023345, at *4 (D. Minn. Oct. 12, 2007). Here again, it is the plaintiff who bears the burden of establishing such standing. See, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

In the present case, Plaintiff must establish that he has standing to raise his claims as to each of the patents and trademarks now at issue.

### 1. The '440 Patent

Plaintiff alleges that on December 21, 2010, he acquired all rights in the '440 Patent from Jacqueline Homann, the Chapter 7 Trustee for Jefferey Kaehr, who invented and at that time owned, the '440 Patent. (Amended Compl., [Docket No. 9], at 3). Plaintiff asserts that a copy of this assignment is attached to his Amended Complaint as Exhibit 2; however, there is no Exhibit 2 attached to Plaintiff's Amended Complaint. (See, Id.).

Plaintiff further alleges that in May 2013, he "licensed the non-exclusive rights to practice the '440 Patent to Bestway . . . but on or about March 28, 2017 Bestway terminated the license agreement and any rights to practice the '440 Patent immediately terminated." (Id. at 4). Plaintiff asserts that a copy of a "Notice from the USPTO that the rights to the '440 Patent exclusively reverted to Sgromo" is attached to his Amended Complaint as Exhibit 3; however, there is no Exhibit 3 attached to Plaintiff's Amended Complaint. (See, Id.).

Although Plaintiff failed to attach a copy of the December 21, 2010, assignment forms to his Amended Complaint, Plaintiff did attach a copy of this publicly available documents to his original Complaint. (Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9). These documents do not, however, demonstrate that the '440 Patent was ever assigned to Plaintiff. (See, Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9).

Instead, these forms demonstrate that the '440 Patent was assigned to Wide Eyes Marketing, Ltd., a company which Plaintiff appears to have operated as its president and which Plaintiff appears to have owned. (See, Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9; Assignment of Patent Rights, [Docket No. 26-2], at 4). It was Wide Eyes Marketing, not Plaintiff, who owned the rights to the '440 Patent at that time. (See, Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9).

Then on June 19, 2013, Wide Eyes Marketing assigned all "right, title and interest in and to" the '440 Patent to Leonard Gregory Scott. (Patent Assignment Form & Assignment of Patent Rights [Docket No. 26-2]). In the publicly available Assignment of Patent Rights form, signed by Plaintiff, Wide Eyes Marketing averred that it was "the sole owner, assignee and holder of the record title" to the '440 Patent. (See, Id.). Plaintiff also signed the Patent Assignment form which was submitted to the United States Patent and Trademark Office and which memorializes the assignment of the '440 Patent from Wide Eyes Marketing to Mr. Scott. (See, Id.). These records demonstrate that Mr. Scott has all rights to the '440 Patent, not Plaintiff.

In support of his assertion that he owns the rights to the '440 Patent, Plaintiff points the Court to a "United States Patent and Trademark Office Notice of Recordation of Assignment

13

Document." [Docket No. 1-3]. This form, however, fails to demonstrate that Plaintiff has or ever

had any ownership rights in the '440 Patent. Notably, the "United States Patent and Trademark

Office Notice of Recordation of Assignment Document" is merely an acknowledgment from the

United States Patent and Trademark Office that Plaintiff filed a document. It is not an affirmation

of the propriety of the purported assignment nor a document purporting to actual transfer any

ownership rights. It is simply a form-letter from the United States Patent and Trademark Office

indicating that Plaintiff filed a document. Moreover, although the form Plaintiff filed purported

to transfer ownership rights in the '440 Patent from Wide Eyes Marketing to Plaintiff, the

"Recordation Date" on the document is April 8, 2020, (Id.), nearly seven years after Wide Eyes

Marketing transferred all "right, title and interest in and to" the '440 Patent to Mr. Scott. (Patent

Assignment Form & Assignment of Patent Rights [Docket No. 26-2]). Plaintiff fails to articulate

how Wide Eyes Marketing could transfer to him an interest which Wide Eyes Marketing had

already transferred to Mr. Scott nearly seven years prior.

On the record now before the Court, Plaintiff has failed to demonstrate a "plausible

foundation" for his claims of ownership of the '440 Patent, and thus, Plaintiff has failed to meet

his burden of establishing that he has standing to assert any infringement claims premised on an

infringement of the '440 Patent. See, Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567,

1571–72 (Fed. Cir. 1997).[8] Because Plaintiff has failed to demonstrate he has standing to raise

---

[8] Throughout his filings, Plaintiff offers an argument that the purported license to Bestway regarding the '440 Patent was merely a license and not an assignment of any rights, and therefore, even during the time of the license, he retained all ownership interest. (See, e.g., Amended Compl., [Docket No. 9], at 4; Plf.'s Mem. [Docket No. 38]). Further, he argues that even if there was some assignment of rights the license agreement was subsequently terminated and therefore, all ownership rights reverted to Plaintiff. (See, e.g., Amended Compl., [Docket No. 9], at 4; Plf.'s Mem. [Docket No. 38]). As discussed above, however, Plaintiff has failed to demonstrate that he ever possessed any ownership rights in the '440 Patent. (See, Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9). It was Wide Eyes Marketing which possessed an assignment of rights of the '440 Patent, and even those rights were completely transferred to Mr. Scott and Eureka Inventions. Patent Assignment Form [Docket No. 1-2], at 3–4; Assignment Agreement, [Docket No. 1-2], at 8–9; Bestway v. Sgromo, No. 4:17-cv-205 (HSG) Patent Assignment Form [Docket No. 79-2] (N.D. Cal. Mar. 5, 2018). It was

any infringement claims premised an alleged infringement of the '440 Patent, the Court lacks the requisite subject matter jurisdiction to adjudicate such a claim.

Therefore, to the extent Defendant's Motion to Dismiss, [Docket No. 23], seeks an Order of this Court dismissing Plaintiff claims premised on the '440 Patent, the undersigned recommends Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.

### 2. The '422 Patent

Plaintiff alleges that on February 28, 2014, the United States Patent and Trademark Office granted him the '422 Patent based on his invention. (Amended Compal., [Docket No. 9], at 4). Plaintiff asserts that a copy of this assignment is attached to his Amended Complaint as Exhibit 4; however, there is no Exhibit 4 attached to Plaintiff's Amended Complaint. (See, Id.).

Plaintiff further alleges that in December 2009, he "granted a license with less than all substantial rights to" the '422 Patent to Imperial Toy LLC. (Id.). According to Plaintiff, this "license was terminated for non-payment of royalties and all rights to the '422 Patent reverted to" Plaintiff. (Id.). Plaintiff asserts that a copy of a "Notice from the USPTO [sic] rights to the '422 Patent reverted to Sgromo" is attached to his Amended Complaint as Exhibit 5; however, there is no Exhibit 5 attached to Plaintiff's Amended Complaint. (See, Id.).

Although Plaintiff failed to attach a copy of the '422 Patent to his Amended Complaint, Plaintiff did attach a copy of the publicly available '422 Patent to his original Complaint. ('422 Patent [Docket No. 1-4). The copy of the '422 Patent does not, however, demonstrate that Plaintiff has or ever had any ownership rights in the '422 Patent. (Id.). Instead, the '422 Patent indicates that Plaintiff was merely one of two inventors listed on the '422 Patent; Imperial Toys, LLC, was the assignee on the '422 Patent. (Id.).

---

Eureka Inventions, as the sole owner of the '440 Patent, who entered into a licensing agreement with Bestway; Plaintiff merely signed that agreement as the "Lead Consultant" and agent of Eureka Inventions. Eureka Inventions LLC v. Bestway (USA), Inc., 4:15-cv-701 (JSW) Licensing Agreement [Docket No. 1-2] (N.D. Cal. Feb. 13, 2015).

Imperial Toy is the assignee of the '422 Patent because, after the provisional application for the '422 Patent but before the issuance of the '422 Patent, Plaintiff assigned "the entire right, titles and interest in and to" the '422 Patent to Imperial Toy. (Patent Assignment & Assignment [Docket No. 26-5]). Plaintiff signed the Assignment on October 7, 2010, and that Patent Assignment form was recorded with the United States Patent and Trademark Office. (Id.). After review of said Patent Assignment form, the United States Patent and Trademark Office designated Imperial Toy as the "Assignee" on the '422 Patent when the '422 Patent was issued on February 18, 2014. (See, '422 Patent [Docket No. 1-4]).

For these reasons, the '422 Patent, as submitted by Plaintiff, fails to demonstrate that Plaintiff has any ownership rights in the '422 Patent. Rather, on the record now before the Court, the '422 Patent demonstrates only that at the time the '422 Patent was issued Imperial Toy possessed all ownership rights in the '422 Patent. (See, Id.).

Plaintiff also directs the Court to a copy of a "Notice from the USPTO [sic] rights to the '422 Patent reverted to Sgromo" in support of his assertion that he possesses some ownership rights in the '422 Patent. (See, Amended Compl., [Docket No. 9], at 4). Here again, however, this form is only a "United States Patent and Trademark Office Notice of Recordation of Assignment Document" which merely indicates that the United States Patent and Trademark Office received a document from Plaintiff. (See, United States Patent and Trademark Office Notice of Recordation of Assignment Document [Docket No. 1-5]). This form fails to demonstrate that Plaintiff has or ever had any ownership rights in the '422 Patent. As discussed above, the "United States Patent and Trademark Office Notice of Recordation of Assignment Document" is merely an acknowledgment from the United States Patent and Trademark Office that Plaintiff filed a document. It is not an affirmation of the propriety of the purported

assignment nor a document purporting to actual transfer any ownership rights. It is simply a form-letter from the United States Patent and Trademark Office indicating that Plaintiff filed a document.[9]

On the record now before the Court, Plaintiff has failed to demonstrate a "plausible foundation" for his claims of ownership of the '422 Patent, and thus, Plaintiff has failed to meet his burden of establishing that he has standing to assert any infringement claims based on an alleged infringement of the '422 Patent. See, Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1571–72 (Fed. Cir. 1997). Because Plaintiff has failed to demonstrate he has standing to raise any infringement claims premised on the '422 Patent, the Court lacks the requisite subject matter jurisdiction to adjudicate such a claim.

Therefore, to the extent Defendant's Motion to Dismiss, [Docket No. 23], seeks an Order of this Court dismissing Plaintiff claims premised on the '422 Patent, the undersigned recommends Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.

### 3. The '298 Patent

Plaintiff alleges that on February 28, 2014, the United States Patent and Trademark Office granted him the '298 Patent based on an invention he created. (Amended Compl., [Docket No. 9], at 4). Plaintiff asserts that a copy of this assignment is attached to his Amended Complaint as Exhibit 6; however, there is no Exhibit 6 attached to Plaintiff's Amended Complaint. (See, Id.).[10]

---

[9] Moreover, the United States Patent and Trademark Office Notice of Recordation of Assignment Document regarding the '422 Patent has a "Recordation Date" of December 28, 2019. (United States Patent and Trademark Office Notice of Recordation of Assignment Document [Docket No. 1-5]). This is after the Bankruptcy Court for the Northern District of California ordered that all of Imperial Toy's assets, including its ownership interest of the '422 Patent, were to be sold free and clear of any interest by Plaintiff. (See, Order [Docket No. 22-6]). Plaintiff fails to articulate how an assignment form he unilaterally completed and submitted to the United States Patent and Trademark Office works to contradict an Order of the Bankruptcy Court for the Northern District of California.

[10] There is a document attached to Plaintiff's original Complaint which is labelled Exhibit 6; however, other than the header "Exhibit 6" the document has no other content. (Exhibit 6 [Docket No. 1-6]).

Plaintiff further alleges that in November 2013, he "licensed the non-exclusive rights to" the '298 Patent to Bestway. (Id. at 5). According to Plaintiff, Bestway terminated that license agreement on March 28, 2017. (Id.). Plaintiff asserts that a copy of a "Notice from the USPTO that rights to the '298 Patent exclusively reverted to Sgromo" is attached to his Amended Complaint as Exhibit 7; however, there is no Exhibit 7 attached to Plaintiff's Amended Complaint. (See, Id.).[11]

The record before the Court regarding the '298 Patent is limited. Plaintiff submitted a copy of the '298 Patent itself, [Docket No. 1-7], and Defendant submitted a copy of the Assignment in which Eureka Inventions assigned all rights to the '298 Patent to Bestway. [Docket No. 26-10]. On this record, Plaintiff has failed to demonstrate a plausible foundation that he has any ownership interest in the '298 Patent.

From the record now before the Court, it appears that on June 17, 2014, Eureka Inventions entered into an agreement with Bestway in which Eureka Inventions assigned to Bestway all rights in the technology which would become the '298 Patent. (See, Assignment, [Docket No. 26-10], at 4). Thereafter, on July 14, 2015, Bestway provisionally filed a patent application for the technology that would, upon approval by the United States Patent and Trademark Office, become the '298 Patent. (See, Id.).

On December 6, 2016, the United States Patent and Trademark Office issued the '298 Patent. ('298 Patent [Docket No. 1-7]). The '298 Patent designates Bestway as both the "Applicant" and the "Assignee." (Id.). Mr. Sgromo—who, from other evidence in the record, appears to have been working as a "Lead Consultant" for Eureka Inventions at the time of the

---

[11] Likewise, there is no "Notice from the USPTO that rights to the '298 Patent exclusively reverted to Sgromo" attached to Plaintiff's original Complaint.

'298 Patent's provisional application—is listed as one of the two inventors on the '298 Patent. (Id.).[12]

Although the documents submitted by Defendant help provide context to the issue before the Court, it is Plaintiff's burden to demonstrate that he has standing to pursue his asserted claims. See, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiff has failed to meet this burden. On the record now before the Court, including the '298 Patent as submitted by Plaintiff, Mr. Sgromo has failed to demonstrate a "plausible foundation" for his claims of ownership of the '298 Patent, and thus, Plaintiff has failed to meet his burden of establishing that he has standing to assert any infringement claims premised on the '298 Patent. See, Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1571–72 (Fed. Cir. 1997). Because Plaintiff has failed to demonstrate he has standing to raise any infringement claims premised on the '298 Patent, the Court lacks the requisite subject matter jurisdiction to adjudicate such a claim.

Therefore, to the extent Defendant's Motion to Dismiss, [Docket No. 23], seeks an Order of this Court dismissing Plaintiff claims premised on an alleged infringement of the '298 Patent, the undersigned recommends Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.

### 4. The "H20 GO!" Trademark

As noted above, to demonstrate that he has standing to assert a trademark infringement claim relative to the H2O GO! Trademarks, Plaintiff must demonstrate that he is either "the owner [of the H2O GO! Trademarks] or" possesses an "exclusive licensee" to the H2O GO! Trademark which provides him with the authority to pursue trademark infringement claims. See, e.g., Coyne's & Co., Inc. v. Enesco, LLC, No. 7-cv-4095, 2007 WL 3023345, at *4 (D. Minn. Oct. 12, 2007).

---

[12] On September 26, 2017, Eureka Inventions and Bestway extended their agreement to include additional technology not at issue in the present action. (Assignment, [Docket No. 26-10], at 4–5).

In his Amended Complaint, Plaintiff alleges that he is the "owner" of the H2O GO! Trademarks. (Amended Compl., [Docket No. 9], at 13). Plaintiff alleges that in October 2015, he "licensed the non-exclusive rights to practice the H2O GO! Trademarks to Bestway"; however, he further alleges Bestway terminated the licensing agreement which caused all rights to revert back to Plaintiff. (Id. at 4). In support of this assertions, Plaintiff provides only the "Notice from the USPTO that the rights to the H2O GO! Trademarks . . . exclusively reverted to" him. (Id.).[13]

Although Plaintiff again directs this Court to a "United States Patent and Trademark Office Notice of Recordation of Assignment Document" in support of his assertion that he possesses some ownership interest in the intellectual property at issue, here again, this form is only a "United States Patent and Trademark Office Notice of Recordation of Assignment Document" which merely indicates that the United States Patent and Trademark office received a document from Plaintiff. (See, United States Patent and Trademark Office Notice of Recordation of Assignment Document, [Docket No. 9], at 16–20). This form fails to demonstrate that Plaintiff has or ever had any ownership rights in the H2O GO! Trademarks. As already discussed above, the "United States Patent and Trademark Office Notice of Recordation of Assignment Document" is merely an acknowledgment from the United States Patent and Trademark Office that Plaintiff filed a document. It is not an affirmation of the propriety of the purported assignment document filed nor a document purporting to actual transfer any ownership rights. It is simply a form-letter from the United States Patent and Trademark Office indicating that Plaintiff filed a document.

Defendant submitted the public documents consisting of the H2O GO! Trademarks as issued by the United States Patent and Trademark Office. [Docket No. 26-11]. The "H2O GO"

---

[13] The document Plaintiff submitted is actually labelled a "United States Patent and Trademark Office Notice of Recordation of Assignment Document." (United States Patent and Trademark Office Notice of Recordation of Assignment Document, [Docket No. 9], at 16–20).

Trademark No. 4,741,874 was issued to Bestway on May 26, 2015. (Trademarks, [Docket No. 26-11], at 2–3). The stylized "H₂O GO!" Trademark No. 4,940,366 was issued to Bestway on April 19, 2016. (Id. at 4–5). The "H2O GO!" Trademark No. 5,565,709 was issued to Bestway on September 18, 2018. (Id. at 6–7).

Here again, the documents submitted by Defendant help provide context to the dispute now before the Court, but it is Plaintiff's burden to demonstrate that he has standing to pursue a trademark infringement claim premised on the H2O GO! Trademarks. See, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiff has failed to meet this burden. Plaintiff has failed to demonstrate any basis on which this Court could reasonably conclude that he has any ownership or licensing rights to any of the H2O GO! Trademarks, Nos. 4,741,874; 4,940,366; or 5,565,709. Therefore, Plaintiff has failed to demonstrate that he has standing to raise any trademark infringement claim based on these Trademarks. See, e.g., Coyne's & Co., Inc. v. Enesco, LLC, No. 7-cv-4095, 2007 WL 3023345, at *4 (D. Minn. Oct. 12, 2007). Because Plaintiff has failed to demonstrate that he has standing to raise any trademark infringement claims premised on an alleged infringement of the H2O GO! Trademarks, the Court lacks the requisite subject matter jurisdiction to adjudicate said claims.

Therefore, to the extent Defendant's Motion to Dismiss, [Docket No. 23], seeks an Order of this Court dismissing Plaintiff claims premised on the H2O GO! Trademarks, Nos. 4,741,874; 4,940,366; and 5,565,709, the undersigned recommends Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.[14]

---

[14] Defendant also argues that Plaintiff is collaterally estopped from raising each of his claims based on the previous finding of several other Courts, as discussed above. (See, Def.'s Mem., [Docket No. 25], 16–18). Because the Court concludes it lacks the requisite subject matter jurisdiction necessary to adjudicate Plaintiff's claims, the Court does not reach Defendant's collateral estoppel argument.

**IV.    Plaintiff's Motion for Leave to Amend Complaint. [Docket No. 52].**

Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], seeks leave of Court to "amend his complaint to join and assert claims for infringement of" the '422 Patent against the Peter Tiger Estate and JA-RU Inc.; "to join and assert claims for infringement of" the '298 Patent and the '440 Patent against Bestway, Eureka Inventions, Leonard Gregory Scott, and the Canadian Tire Corporation; to assert claims against Bestway, Eureka Inventions, and the Canadian Tire Corporation alleging infringement of the H2O GO! Trademarks; to assert claims against the Canadian Tire Corporation alleging infringement of the Summer Waves Trademarks; and to assert various state law claims against Eureka Inventions and Bestway. (Plf.'s Mot. [Docket No. 52]). Plaintiff alleges that amending his Amended Complaint to include these new defendants would conserve party and judicial resources.

In filing his Motion for Leave to Amend Complaint, [Docket No. 52], Plaintiff has failed to comply with the Local Rules governing nondispositive civil motions practice. See, Local Rule 7.1(b). District of Minnesota Local Rule 7.1(b) requires that before a party files a nondispositive motion, such as Plaintiff's present motion, a party must, pursuant to Local Rule 7.1(a) "meet and confer with the opposing party in good-faith effort to resolve the issues raised by the motion." There is no indication in the Plaintiff's moving paper that he has attempted to meet and confer with Defendant regarding the relief sought in Plaintiff's Motion. There is no meet and confer statement and there is no indication in the record, whatsoever, that Plaintiff has conferred with Defendant's counsel in any way regarding his Motion for Leave to Amend Complaint.

In addition, Local Rule 7.1(b) requires that before a party files a nondispositive motion, such as Plaintiff's present Motion, "a party must contact the magistrate judge's courtroom deputy

to schedule a hearing." Plaintiff has not filed a Notice of Hearing indicating that he contacted the undersigned's chamber to acquire a hearing date.

Further, in filing his Motion for Leave to Amend Complaint, [Docket No. 52], Plaintiff has also failed to comply with Local Rule 15.1. In filing his Motion for Leave to Amend Complaint, [Docket No. 52], Plaintiff has submitted insufficient materials describing the amendments he wished to specifically make even if the Court liberally construes Plaintiff's motion paper. Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], fails in particular to comply with Local Rule 15.1(b), which requires that:

> [a]ny motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading.

Local Rule 15.1(b) (emphasis added).

Plaintiff's Motion to amend is not accompanied by any proposed or redline amended complaint. In fact, Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], fails to inform the Court as to any specific factual amendments Plaintiff wishes to add to his Amended Complaint. Even construing Plaintiff's Motion liberally, it falls well short of complying with the requirements of Local Rule 15.1(b).

Although the Court is required to liberally construe the content of Plaintiff's pleadings as he is proceeding pro se, he is nevertheless required to comply with all substantive and procedural laws. See, e.g., Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Plaintiff's failure to comply in any way with the Local Rules governing motion practice in this District represents a sufficient, independent basis to deny Plaintiff's Motion for Leave to Amend Complaint. See, LR 7.1(g).

In an abundance of caution, however, the Court will address the merits of Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], on the limited record with which the Court was provided.

Except where the Rules permit amendment as a matter of course, a party may amend its pleading before trial only with the opposing party's written consent or the court's leave, which Rule 15 instructs courts to "freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits. In the absence of an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," this right to amend is not absolute. United States ex. Rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). A court may deny a motion for leave to amend under Rule 15(a)(2) if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotations omitted).

As noted above, Plaintiff seeks to amend his Complaint to assert new infringement claims against the proposed defendants based on alleged infringement of the '440 Patent, the '422 Patent, the '298 Patent, the H2O GO! Trademarks, and the Summer Wave Trademarks. This Court has, however, already concluded that Plaintiff lacks standing to assert these claims. The Court will not repeat that analysis here. It is sufficient to state that the Court's finding that

Plaintiff lacks standing to assert any infringement claim premised on an alleged infringement of the intellectual property at issue in the present case demonstrates that the Court would lack the requisite subject matter jurisdiction to adjudicate the proposed amendments to Plaintiff's Amended Complaint. Thus, it would be futile to permit Plaintiff to amend his Amended Complaint to include the proposed infringement claims based on an alleged infringement of the '440 Patent, the '422 Patent, the '298 Patent, the H2O GO! Trademarks, or the Summer Wave Trademarks.[15]

Therefore, Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], is **DENIED**.

## V.    Plaintiff's Motion for Preliminary Injunction. [Docket No. 11].

Through his Motion for a Preliminary Injunction, [Docket No. 11], Plaintiff seeks an Order of this Court enjoining Defendant from selling any product which infringes on the patents and trademarks at issue in the present action. (Plf.'s Mot. [Docket No. 11]). In general, Plaintiff alleges that he will suffer irreparable harm if Defendant's conduct is not enjoined. (Plf.'s Mem. [Docket No. 14]).

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as

---

[15] Plaintiff also seeks to amend his Amended Complaint to assert various state law claims. Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009). "[Supplemental jurisdiction] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. If it appears that state issues substantially predominate, courts have tended towards dismissing said state law claims without prejudice, to be left for resolution by the state courts. Id. Because this Court recommends dismissing all of Plaintiff's federal law claims, at this early stage of this litigation, the Court also recommends declining to exercise supplemental jurisdiction over any proposed state law claims. See, Gregoire v. Class, 236 F.3d 413, 419–20 (8th Cir. 2000) (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Tom T., Inc. v. City of Eveleth, No. 3-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); see, Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012) (explaining that these factors apply to both preliminary injunctions and temporary restraining orders). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see, Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See, Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010); Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005).

On the first factor of whether or not to issue a temporary restraining order, i.e., probability of success on the merits, the Court in Dataphase, "rejected the notion that the party

seeking relief must show 'a greater than fifty percent likelihood that he will prevail on the merits,' holding instead that 'where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." *Planned Parenthood Minn. N.D., S.D. v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (citing *Dataphase*, 640 F.2d at 113). Thus, the Eighth Circuit has instructed District Courts considering this factor to query whether the moving party has a "fair chance of prevailing." *Id.* at 732.

In the present case, Plaintiff fails to demonstrate that he has a "fair chance of prevailing" on any of his claims. For the reasons discussed above, the Court has already concluded that Plaintiff lacks the standing necessary to raise any of the claims alleged in his Amended Complaint, and therefore, the Court lacks the requisite subject matter jurisdiction necessary to adjudicate Plaintiff's claims. The Court will not repeat that analysis here. It is sufficient to state that the undersigned's recommendation that Defendant's Motion to Dismiss, [Docket No. 23], be granted and this matter be dismissed is sufficient to demonstrate that Plaintiff has failed to demonstrate he has a fair chance of prevailing on any of his claims.

Therefore, the undersigned recommends that Plaintiff's Motion for Preliminary Injunction, [Docket No. 11], be **DENIED**.

## VI.    Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 52], is **DENIED**; and

2. Defendant's request to stay the present proceedings while the undersigned had Defendant's Motion to Dismiss under advisement is **DENIED as moot**.

Further, based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.  Plaintiff's Motion for Preliminary Injunction, [Docket No. 11], be **DENIED**; and

2.  Defendant's Motion to Dismiss, [Docket No. 23], be **GRANTED**.

Dated: October 7, 2020                                      s/Leo I. Brisbois
                                                           Hon. Leo I. Brisbois
                                                           United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).